ZENAS T. BURNELL, Appellant, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Respondents.

Where a common carrier has contracted to transport a passenger and his baggage, although his strict liability as a common carrier ceases upon a failure of the owner to call for his baggage within a reasonable time after its arrival at the place of destination, a modified liability, analogous to that of warehouseman, still exists; and the carrier is bound to exercise ordinary care in keeping and preserving the property until it is called for or disposed of according to law.

This obligation is not a new and independent obligation, arising from the unprovided for and accidental circumstance of the property being left in the hands of the carrier, but is imposed by the contract of carriage, and therefore rests upon the carrier with whom the contract was made, although the place of destination is beyond its route.

The failure of the carrier, in such case, to deliver the property to the owner when demanded, *prima facie* establishes negligence and want of due care ; and the *onus* of accounting for the default lies with the carrier.

The plaintiff purchased a ticket of the defendants, a railroad corporation, at a point on their line, for New York, and had his baggage checked for that city. He arrived there, by the Hudson River railroad, a connecting line of road, at nine o'clock in the morning, and about noon of that day gave his check to an expressman in the city of Brooklyn, with directions to get the trunk from the depot of the Hudson River railroad for him. The expressman neglecting to do so, when two days afterward, the plaintiff demanded the trunk at the depot, it could not be found. The defendants had, in pursuance of an arrangement with the Hudson River Railroad Company, transferred the baggage to the latter at Albany, and it had been conveyed by them to New York and deposited in their depot. In an action brought by the plaintiff to recover the value of his trunk, and contents.—*Held*, that he was entitled to recover, in the absence of any proof on the part of the defendants accounting for the failure to deliver it.

(Argued February 20 ; decided March 21, 1871.)

APPEAL from an order of the General Term of the Supreme Court of the first judicial district, reversing a judgment for plaintiff, entered upon the report of a referee, and granting new trial.

On the 5th day of March, 1866, the plaintiff purchased, at the ticket-office of the defendants, at Palmyra, a ticket for the city of New York, and his baggage, consisting of a trunk,

was regularly checked, and placed in their custody.  By an arrangement between the defendants and the Hudson River Railroad Company, passengers from Palmyra to New York were carried from Albany, by the latter company, to its station at the foot of Thirtieth street, in the city of New York, where the baggage of the passengers is delivered by them.

The plaintiff and his baggage reached the city of New York on the 6th of March, 1866, at about 9½ o'clock A. M.   The plaintiff, instead of calling for his trunk upon the arrival of the train, immediately proceeded to the house of his mother in Brooklyn, where he purposed to stop, and, at about noon of the same day, gave the check for his baggage to an expressman in Brooklyn, with directions to get the trunk from the Hudson River Railroad Company's station.   The expressman never called for the trunk; and, on the morning of March 8th, the plaintiff called at the depot and demanded his trunk, but upon searching for it, it could not be found.

This action was brought to recover the value of the trunk. The referee found that the delay of the plaintiff was not, under the circumstances, unreasonable, and that the trunk was lost through want of ordinary care and diligence by the defendants, and gave judgment for the plaintiff.

The General Term reversed this judgment, and plaintiff thereupon appealed to this court.

*A. C. Morris,* for the appellant, insisted that, by the contract of carriage, defendants were liable for the baggage until called for.  (*Norway Plain Co.* v. *Boston & Me. R. R. Co.,* 1 Gray, 271, 274; *Cary* v. *Cleveland and Toledo R. R. Co.,* 29 Barb., 35; *Fisk* v. *Newton,* 1 Denio, 47; *Ostrander* v. *Brown,* 15 Johns., 42; *Van Horn* v. *Kermit,* 4 E. D. Smith, 454.)

*James Matthews,* for respondent, insisted that defendants were not liable as carriers.  (*Roth* v. *The Buff. and St. L. R. R. Co.,* 34 N. Y., 548; *Jones* v. *Norwich Trans. Co.,* 50 Barb., 193; *Holdridge* v. *Utica and Black River R. R. Co.,* 56 id.,

191.) That they were, in any event, merely gratuitous bailees. (Story on Bail., §§ 17, 23, 62, 64, 65, 79, 97; Edwards on Bail., 44, 45, 69, 70, 95, 102, 103, 105, 107, 129; Angell on Carriers, §§ 10, 11; *Dorman* v. *Jenkins*, 2 Adolph. & Ellis, 256; *Foster* v. *Essex Bank*, 17 Mass., 479; *Knapp* v. *Curtis*, 9 Wend., 60.)

CHURCH, Ch. J.   The plaintiff took passage, at Palmyra, on the defendant's road for New York, and purchased a ticket and checked his trunk to the latter place.   On his arrival in New York, the plaintiff, without calling for his baggage, went to Brooklyn, and the second day after his arrival presented his check and demanded his trunk, but it could not be found, and has not since been found.   This action was brought to recover the value of the trunk and contents.   The referee found that the trunk was lost through the negligence of the defendants and their servants, and that the plaintiff was entitled to recover, upon which a judgment was entered, which was reversed by the General Term, in the first district, and a new trial ordered, from which the plaintiff appealed to this court.

The Supreme Court placed its decision upon the ground that the defendants' liability ceased with the transportation of the trunk by the Hudson River Railroad Company, to New York, and its readiness to deliver it within a reasonable time after arrival, and that whatever responsibility was incurred afterward, in keeping or storing it, was incurred by the latter company, for which the defendants were not liable.

The correctness of this decision depends upon the nature of the contract between carrier and passenger, in respect to the custody and care of baggage upon the failure of the owner to call for it within a reasonable time after its arrival at the place of destination.

As to what is a reasonable time cannot be definitely determined, but must be left to the circumstances of each case. Up to the expiration of that period the strict liability of common carriers continues.   After that a modified liability, anal-

agous to that of warehousemen only exists. The rule of exemption from strict liability was carried to the utmost limit of propriety, to say the least of it, in *Roth* v. *Buffalo and State Line R. R. Co.* (34 N. Y., 548.)

It is unnecessary to attempt a definition of *reasonable time*, as applied to this subject in this case, because it is clear that sufficient time had elapsed to relieve the carrier from his peculiar liability as insurer of the property. But there still remained a duty or obligation on the part of the Hudson River company, to exercise ordinary care in keeping and preserving the property until it was called for, or was disposed of according to law. The question is whether this obligation, with its modified liability, was imposed by the contract of carriage, or whether it was a new and independent obligation, arising from the unprovided for and accidental circumstance of leaving the trunk in possession of the carrier. If the latter is the correct theory, then the defendants are not liable, and the action should have been against the Hudson River company; if the former, they are liable, because by their contract they assumed the responsibility of every duty and obligation imposed by the contract of carriage. The Hudson River company were their agents in performing the contract.

In considering such questions, it is proper to regard the improved facilities of traveling, with its incidental contingencies, accidents and conveniencies, and the usual mode of transacting such business, to the end, that while on the one hand, onerous and unnecessary duties should not be imposed upon the carrier by an unnatural or arbitrary construction of the contract, on the other hand, that it should be so construed as to afford reasonable protection to the public. The rule applicable in the construction of all contracts, that existing facts and all the surrounding circumstances, are to be regarded for the purpose of effectuating the intent of the parties is also to be applied. I think the duty or obligation referred to, of storing the property and exercising ordinary care to preserve and protect it upon the happening of the contingent event of its not being called for, was incurred at the time the

contract was made, and is a part of the contract itself. It is to be presumed that the parties intended to provide for every contingency incident to the subject of the contract.

Leaving baggage with a carrier by railroad, either for temporary convenience, from necessity, sickness or accident is not such an unusual or exceptional circumstance, as to create a presumption that it was not within the contemplation of the parties at the time the contract was made.

The duty of exercising care over property thus remaining in their possession, is a part of the duty of carriers, incidental it is true to their principal or main duty, but nevertheless incumbent upon them, and it is no less a duty growing out of their relation of carriers, because their liability is mitigated to that of ordinary bailees for hire. Besides this is the ordinary mode in which this business has been transacted, as the evidence in this case shows, and as all railroad companies are in the habit of doing. Baggage thus left is and always has been kept and cared for, and the manner of disposing of it, if not finally called for, was long since regulated by law (Laws of 1837, p. 311), and it is presumed that the parties contracted with reference to the existing state of facts, and to the customary manner of transacting such business.

The other view terminates all relations between carrier and passenger, immediately upon the expiration of the "reasonable time," within which the baggage must be called for, and transforms the carrier into a mere accidental finder, or gratuitous bailee liable only for gross negligence. In other words, it makes two contracts in every case where baggage is left, and complicates the rights and duties of the respective parties, and while it essentially impairs the security of the public, confers no substantial benefit upon the carrier. Its tendency would be to induce carelessness and negligence, where care and vigilance is necessary. The fair construction of the contract is that the defendants agreed for a consideration to transport the plaintiff and his trunk to New York, and deliver the latter to him on its arrival, if called for, if not that it should be properly stored, and reasonable care

exercised to prevent injury or loss until it was called for, or was lawfully disposed of. This simplifies the transaction, carries out the intention of the parties, legalizes the uniform practice, and does justice to the carrier and the public. Although the rule on this subject, has not been very definitely settled, yet the principles herein indicated are not new. (*Cary* v. *Cleveland & Toledo R. R. Co.*, 29 Barb., 35; *The Norway Plain Co.* v. *B. & M. R. R.*, 1 Gray, 271 and cases cited.

These views in effect determine the liability of the defendants in this action. The Hudson River company being the agents of the defendants in performing the contract, and the contract of storage, being a part of the original contract of carriage, it follows that the defendants are liable for the loss in this case if any one is liable. ALLEN, J., in 29 Barb., 35, said, "There was but one contract, one hiring and one consideration paid for the carriage and storage of the baggage; the contract for storing resulting from and being an incident to the main contract for carriage. It follows that the party liable upon the main and express contract, is liable upon the incidental and implied contract, and the Buffalo and State Line road, in the storage as in the carriage of the trunk must be deemed the agent of the defendant performing its contract." (*Hart* v. *R. & S. R. R. Co.*, 4 Seld., 37; *Quimby* v. *Vanderbilt*, 17 N. J., 306.)

The only remaining question is whether a cause of action was established, based upon the negligence of the Hudson River Company. The failure of that company to produce the subject of bailment when demanded, *prima facie* established negligence and want of due care. When there is a total default to deliver the goods bailed, on demand, the *onus* of accounting for the default lies with the bailee. (*Platt* v. *Hibbard*, 7 Cowen, 497–500, note a; *Schwerin* v. *McKie*, 5 Robts. R., 404, and cases cited.) It is claimed that the failure to produce the trunk, and the charge of negligence is fully met by the evidence produced on the part of the defendants, that the building used for storing baggage was safe and secure

and in charge of trusty agents and servants, and properly guarded night and day. There was no evidence as to how this particular trunk got out of the possession of the Hudson River company. If it had been burned or stolen, without fault on their part, the defendants would not have been liable.

The evidence certainly shows a commendable vigilance in the general arrangements to protect this class of property, but it fails to point out how or by what means this trunk was lost. The inference that it was delivered to the wrong person by mistake is quite as legitimate as that it was stolen. To say that the servants were generally careful, does not establish as a question of law, that they were not careless in respect to this article. It was incumbent on the defendants to show that the loss of this trunk was not attributable to the want of care of their servants, and the evidence was such that the referee was justified in finding that they had failed to do it.

If this trunk was delivered to the wrong person the circumstances should have been shown, otherwise it would be presumed negligent, as no such delivery would be proper without the presentation of the duplicate check, or satisfactory evidence of its loss, and of the ownership of the property. If the trunk had been delivered upon such evidence as vigilant, careful persons would regard as sufficient, the defendants might have been relieved from liability, but no evidence of this character was produced, and we think the finding of the referee was fully warranted.

The order granting a new trial must be reversed, and the judgment affirmed.

Rapallo, J., dissented. Andrews J., took no part. All the others concurring, the order granting a new trial was reversed and the judgment affirmed.