By the Court.—Monell, Ch. J.
Upon the first appeal in this case, a majority of the court held that upon the facts then presented, the relation of passenger and carrier, between the plaintiff and defendants, *136 had not been established; and that as the carriage of baggage was only an incident to the carriage of the passenger, the defendants were not liable as common carriers.
These propositions can not now be disturbed, unless upon the second trial the facts have been so far varied that they establish the relation which they failed to establish on the first trial.
Upon dismissing a complaint at the close of all the evidence, the court must be satisfied there is no dispute whatever in the evidence, which would require its submission to the jury. If there is no such dispute, then the law will pronounce the appropriate judgment.
Upon the motion to non-suit, the plaintiff is entitled to have the evidence taken as true, and also to have every intendment and fair and legitimate inference and presumption taken in his favor.
If, therefore, the evidence presents any conflict in respect to any material question of fact; or, if in respect to any such question, the fair and legitimate inference from the evidence is favorable to the plaintiff’s cause of action, it would be error to take the case from the jury.
Under the exposition of the law applicable to this case, as decided upon the former appeal, the only duty of this court now is, to see whether the facts proven on the first trial were essentially the same as those proven on the second trial. If they were, the former decision is stare decisis.
It is now claimed that certain facts, which the court upon the first appeal assumed to be established, have been changed upon the second trial. ' These facts are, that the trunk was to be taken with the owner, and he and his baggage to go over the same route; that the baggage was taken by the defendants’ baggage agent, through mistake or accident, without authority ; *137 that the plaintiff made in effect a fraudulent representation when he checked his baggage, namely, that he intended a continuous trip through to New York. It was also assumed, that there was no evidence of any arrangement between the defendants and the Grand Trunk Railway, which would authorize any contract for the carriage of baggage by the defendants, without the passenger.
It is now insisted that the proof is different in these particulars, namely, that.it shows the check was the defendants’ regular check ; that there was no mistake or accident, and that there was no misrepresentation by the plaintiff.
In respect to the first fact, namely, that the check was the defendants’ regular check, I do not find it supported by the evidence. There was some proof that baggage, upon which there were similar checks, had frequently been carried over the defendants’ road. But the evidence did not establish that it was the regular check of the defendants, put by it or by its agents upon baggage intended for transportation over its road
The check in question, and similar checks, were put upon the baggage at Montreal, and such baggage sometimes, or frequently, passed over the defendants’ road.
In respect to the carriage by mistake or accident, the evidence was the same on each trial. The baggage-master at Troy received the baggage from another road, went with it to East Albany, and delivered it to the through train for New York.
Upon the second as upon the first trial, there was no evidence of any express misrepresentation by the plaintiff, but a misrepresentation to be implied from the purchase of a continuous trip ticket.
But the new evidence, giving it all the scope and significance claimed for it by the appellant’s counsel, *138 does not establish the relation of carrier and passenger between the parties.
Except under some special contract, the carriage of baggage is an incident to the carriage of the passenger, and the carrier is not responsible unless the two concur.
In this case there is no proof of any special contract, either express or implied, which would create a liability on the part of the defendants. None was expressed, nor can any be inferred from any evidence given upon either of the trials.
It is, however, further claimed, that a liability may be implied from the check attached to the trunk, which some of the witnesses admitted, was a kind of check attached to baggage which sometimes, or frequently, was carried by the defendants ; and that the jury had a right from the evidence, and an inspection of the check, to infer that it was the check of the defendants ; and that from it a special contract might be implied. Not only did the passenger tickets express that the passage of the plaintiff was by the Peoples' line of steamboats, but the testimony of the witnesses, and the check itself, indicate that the baggage was to go by the same conveyance. It was a through check from New York to Montreal, and the letters H. R. & R. R. indicate, very clearly,6 ‘ Hudson River and Railroad,” meaning by steamboat to Albany, and thence by “ Saratoga and Rutland line ” of railroad to Montreal. A nd being used for the reverse passage, it signifies the same routes.
There was nothing in this evidence which required its submission to the jury. They could not have legitimately deduced from it a special contract by the defendants to carry the plaintiff’s baggage; and a verdict upon it in the plaintiff’s favor would have been unsupported.
Upon the whole, I am unable to distinguish the *139 present from, the former appeal; and the decision then made must stand.
■ There is, however, another ground, upon which this judgment can be upheld, which is so far independent of the first ground, that it becomes a matter of no importance whether the relation of carrier and passenger existed or hot. For even assuming the defendants were carriers of the baggage, and had incurred the liability of common carriers, such liability was changed into that of warehousemen, and they can be charged only as warehousemen.
This question was briefly discussed in the opinion of the court upon the first appeal. But as it did not then receive the concurrence of a majority of the court, it remains an open question.
The facts are not now different, although the appellant’s counsel claims, that the defendants’ evidence of care in the custody of the property should, upon the question of negligence, have gone to the jury.
It is not, however, insisted that there was any contradiction in the evidence, but merely that it was improbable in itself, and insufficient to show proper care.
It is now well settled that the liability of a railway as a carrier, ceases upon the expiration of such reasonable time after the arrival of the baggage at its place of destination, as will enable the traveler to receive and take charge of it (Curtis v. Avon, Geneseo, and Mt. Morris R. R. Co., 49 Barb. 148; Burnell v. N. Y. Central R. R. Co., 45 N. Y. 184). .
In the last case, the baggage was not demanded until two days after its arrival, and the court held that the carriers’"liability had ceased, and that of warehouseman had attached.
A .warehouseman is held to the exercise of only ordinary care. The non-delivery of the property is sufficient to raise a presumption of negligence, and the burden is then thrown upon the warehouseman, to *140 show that sufficient ordinary care had been bestowed on the property. If that is shown, the warehouseman is relieved from liability.
. In the recent case of Coleman v. Livingston (36 Sup’r Ct. R. 32), which has been affirmed by the court of appeals (56 N. Y. R. 658), the liability of a warehouseman, and the rules respecting the burden of proof, are so fully stated that I need not do more than to refer to it.
In the case before us, by the omission of the plaintiff for at least three days to demand his baggage, the liability of the defendants as carriers ceased. But they were still under obligation to see that it was • properly stored, and reasonable care exercised to prevent injury or loss, until it was called for (Burnell v. N. Y. Cent. R. R. Co., supra).
The question, therefore, is, Was there any negligence ■ by the defendants ?
Their failure to produce the trunk when demanded, primafacie established negligence and want of due care.
Did they remove the presumption % I think they did.
The evidence shows that all due, ordinary, and - proper care was bestowed upon the property. That it was not sufficient, was not the defendants’ fault. It was placed in their usual baggage-room, which was an enclosed room, in charge of a baggage-master, to which no one was allowed access, except in the presence of such master. It remained in such room for three days, and was seen on the morning, shortly before the plaintiff demanded it. When the demand was made it could not be found.
The defendants were not bound to account for it. Tt was enough that they had taken the usual and ordinary care, and that the loss was not attributable to their want of care. In what particular manner, or by whom it was taken from the baggage-room, it was not *141 Incumbent upon-the defendants to show. It may have been feloniously taken by a stranger, or even by one ■of the defendants’ servants, yet if the defendants were not negligent, such felonious taking would not create a liability.
The care which the evidence shows the defendants bestowed upon the plaintiff ’ s property, was all which, under the circumstances, the law required, and fully repelled the presumption of negligence.
As the evidence was without contradiction, there was nothing for the jury, and the complaint was properly dismissed.
In examining this question, I have treated the liability of the defendants as not affected by their private agreement with the express company, and have regarded the latter as, at most, the mere agents of the defendants.
The judgment should be affirmed.
Sedgwick, J., concurred.